UNITED STATES *v.* ONE HUNDRED AND TWENTY-NINE BALES OF MERCHANDISE.[1]

*(District Court, E. D. Pennsylvania. May 12, 1891.)*

1. CUSTOMS DUTIES—FORFEITURE—FRAUDULENT VALUATION.
   In an information by the government for the forfeiture of goods on account of fraudulent undervaluation, the burden of proof is on the government to show, first, that the representations made in the invoice, affidavits, etc., were false, and, second, that they were known by the claimant to be so, and were made to defraud the government.

2. SAME—BURDEN OF PROOF.
   Where goods were entered as "cattle hair," and represented to be such by the claimant, the burden of proof in a suit on information to forfeit them for fraudulently designating them as such is on the government, which must show that they are in fact something else, and that the claimant so knew, and entered them as hair to defraud the government.

At Law.

Information for forfeiture under the provisions of section 9 of the act of June 10, 1890, for entry of merchandise by false invoices, affidavits, etc. Entry was made of 129 bales of so-called "cattle hair" upon August 25, 1890, per steam-ship British Prince by the claimant, and also upon September 22, 1890, per steam-ship Ohio 24 bales of so-called "cattle hair," and afterwards upon October 27, 1890, per steam-ship British Prince 12 bales. Upon the trial the defendant's books and papers, and the invoices and letters and memoranda concerning the importation from the sellers, Nathan & Co., of Paris, were produced by the defendant Henry Schmidt. The testimony of the plaintiff tended to show that the prices set down in the invoice at 1 franc, 37 centimes, per kilogram were not the actual prices paid to the seller by the claimant, and that the article was not cattle hair but wool, and that the oath was false as made by the seller that there was no other invoice than the consular invoice in existence. It was also shown that in the case of one of the importations the merchandise was sold upon arrival under the name of "pulled wool" and not cattle hair, and in the same way in which wool is sold with the tare off, and not gross for net, as is the usage in regard to hair. Testimony was produced by experts that the article was bought, sold, and used in trade as wool. The testimony of the defendant tended to show that the price stated in the invoice was the actual cost of the goods at the place of purchase exclusive of charges, while

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

the actual price paid was a price free on board at the seaport, including commission, inland freight, town dues, etc.; that the actual cost exclusive of charges was stated in the invoice because so required by law; that the only differences between the invoices was the statement of these charges; that the sale of the merchandise as wool was made by a salesman without instructions, and did not in fact deceive any one, as the purchaser said at the time it was hair and not wool, and paid only a hair price. The defendant also produced experts who testified that the merchandise was common goat hair which under the practice of the customs officials was classed in entries and appraisements as "cattle hair," that being the term employed generally for common hair.

*W. Wilkins Carr*, Asst. U. S. Atty., and *John R. Read*, U. S. Atty., contended that if the jury believed that the invoice was not in all respects correct and true, the goods having been obtained by purchase, and did not state the actual cost thereof and all charges thereon, then the verdict should be for the plaintiff.

*Frank P. Prichard* and *John G. Johnson*, for claimant, contended that as the evidence showed that the importer had acted in entire good faith, the plaintiff could not recover; that the goods were not liable to forfeiture for an honest mistake, but only for a fraudulent act.

BUTLER, J., (*orally charging jury.*) The government having seized the merchandise involved in this suit, is here seeking a judgment of forfeiture on the ground, as charged, that the owner was guilty of fraudulent practices connected with its importation to this country. The information or statement of the charges, contains four counts. The first charges, in substance, "That the defendant did make and attempt to make the entry of the merchandise by means of fraudulent and false invoices of the same, contrary to the act of congress." The second, "That he did make entry of the merchandise by means of fraudulent and false affidavits, papers, written statements, contrary to the act of congress." The third, "That he did make and attempt to make an entry of the merchandise by means of false and fraudulent invoices, affidavits, letters, and papers and written statements, which falsely and fraudulently designated and represented the said merchandise to be cattle hair, contrary to the act of congress." Fourth, "That he did make entry of the merchandise by means of false and fraudulent practice and willful act of omission, by means whereof the United States was deprived of lawful duty accruing upon the said merchandise, in that he, the said defendant, falsely and fraudulently designated and described the said merchandise as cattle hair, contrary to the statute."

The substance of the charges contained in the several counts just read, may be arranged under two heads. They have been so arranged by the counsel on both sides, and the subject thus discussed: *First*, that the defendant undervalued the merchandise; that is, that he represented, by the invoices and written papers, and entry, that it was of less value than it cost him, less value than its actual worth. *Secondly*, that he entered the merchandise as "cattle hair" instead of "wool," which the govern-

ment says it was. The burden of proof is on the government. You must be satisfied from the evidence, fully satisfied in view of the character of the case, that the charges are true; first, that there were representations made in the letters, affidavits, or invoices, respecting the value of the merchandize, which were untrue. If the representations were true that branch of the case fails. If they were untrue the evidence must go further and satisfy you that the defendant did not believe them to be true; in other words that he made the representations intending to impose on the government a false understanding of the value of the goods; that his conduct in this respect was a fraud. An innocent misrepresentation of the kind, or an innocent omission of anything from these papers which should have been stated, would not render the defendant liable to a forfeiture. So that to sustain this first branch of the case,—the charge of fraudulent undervaluation,—the evidence must satisfy you not only that he undervalued the goods, as charged, but that he did it fraudulently, and not through mistake.

Then as respects the other branch,—that he entered the merchandise .as "cattle hair" instead of "wool,"—here again you must be satisfied that this was wool, and not cattle hair. He entered it as cattle hair. It was classified by the government as hair, simply; and as you have been told by the witnesses, "cattle hair" and "hair" are terms used synonymously by merchants, and understood to mean the same thing. The government so classified it. One of the officers who made this classification now tells you that he did it carelessly. Nevertheless he represented the government. He was bound by his duty to examine, and determine what it was. He pronounced it hair; as the defendant entered it. But even if it had not been so classified by the government, the burden would be upon the plaintiff to prove that the representation was not true; that the merchandise was not cattle hair as represented, but wool. Now, has that fact been proved? Can you say to-day whether this should-be called hair or wool? There have been before you, on both sides, gentlemen of high character, of great intelligence, and very extensive experience in wool and hair, dealers in it, manufacturers of it, raisers of it, and these men differ in opinion about this article. Much the larger number, however, of these witnesses, testify that it is hair. But can you say with certainty whether it is wool or hair? Unless you find it to be wool this branch of the case fails. If you find it to be wool, still the charge is not sustained unless you also find that it was called hair fraudulently, that is, unless you find .that when the defendant entered it as hair he did not believe it to be hair, but wool. It must not only appear to you, satisfactorily, that it is wool, but that the defendant when he represented it .as hair did so with a fraudulent purpose, not believing it to be hair. Does the evidence satisfy you of this,—not only that the article is wool, but that the defendant believed it to be wool and represented it as hair for the purpose of defrauding the-government? Unless you do, I repeat, the charge fails. I will not dwell upon the case. The defendant is charged with having made false representations respecting the value of this merchandise, in the invoices and other papers connected with the

importation, and is also charged with having made false representation respecting the character of the merchandise, a false entry of it, as hair, instead of wool. It is for you to judge, in view of the testimony and the comments of counsel, whether or not the government's case is sustained. Unless it is proved, fully and clearly, your verdict must be for the defendant. His goods should not be forfeited unless you are satisfied that he is guilty of the fraudulent conduct charged against him. If the evidence, on the other hand, satisfies you that he is guilty of intentionally making misrepresentations, as charged, then you should sustain the claim of the government, by a verdict in its favor. The case is important, as all such cases are. It is important that the revenue laws of the government be sustained. It is equally important to the defendant. It involves a large amount of property, and also involves character. The plaintiff's points I cannot affirm; what I have said I regard as a sufficient answer to them.

